**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES V. HOWARD ,

     Plaintiff,

          v.

BUREAU OF PRISONS, et al.,

     Defendants.

CIVIL ACTION No. 3:05-CV-1372

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is the Motion to Dismiss and for Summary Judgment

filed by all Defendants (Doc. 144), in response to Plaintiff James V. Howard's Amended

Complaint (Doc. 135).  Because the claims for money damages against the BOP and the

individual defendants in their official capacities are barred by sovereign immunity;

because Plaintiff failed to exhaust administrative remedies with regard to Counts I, II, VII,

the due process claim in Count V based on all but two incident reports, and the Eighth

Amendment claim in Count VI based on Howard's alleged placement in a dry cell;

because Plaintiff has not alleged in any Count that Defendants Nash, Londis, Walters,

Litchard, Joseph Smith, Morales, Marr, Dodrill, or Bunch were personally involved in

violating his rights; because the ADA does not apply to federal agencies; because

Plaintiff has not put forth sufficient evidence to survive the motion for summary judgment

on his Rehabilitation Act claim in Count III, his Eighth Amendment claims in Counts IV, V,

or VI or his First Amendment claim in Count IV; and because his procedural due process

claims in Counts IV and VI are barred by adequate postdeprivation remedies and those in

Count V are barred by the favorable termination rule, Defendants' motion will be granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

Plaintiff James V. Howard, a prisoner in federal custody at FCI Schuylkill, has sued the Bureau of Prisons (BOP) and fifteen (15) individual Defendants, all in their official and individual capacities, who at relevant times held the following positions: At FCI Schuylkill, John Nash was warden, Robert P. Smith was a correctional counselor, Kevin Bittenbender was a disciplinary hearing officer (DHO), Dr. Gary Londis was Chief Psychologist, Dr. Glenn Walters was a psychologist, Craig Litchard was a lieutenant, and Thomas Reisinger was Special Investigative Supervisor (SIS); at USP Lewisburg, Joseph Smith was warden, Jon-Michael Morales and Kenneth Gabrielson were lieutenants, Dean Hollenbach was Unit Manager, Jeff Bunch was a DHO, and James Marr was a Correctional Officer; finally, Scott Dodrill is Regional Director and Mickey Ray is former Regional Director.

In his Amended Complaint (Doc. 135), Plaintiff alleges that when he arrived at FCI Schuylkill on July 24, 2002, he "requested minimal accommodations due to diagnoses of Bi-Polar, Schizophrenia and related disorders," but that Defendants Dr. Walters and Dr. Londis refuted these diagnoses and as a result, Plaintiff was assigned a cell mate by Defendant Smith. (Doc. 135 ¶¶ 15-17.) Plaintiff alleges that on July 24, 2003, he was attacked by this cell mate and that Defendant Reisinger's disciplinary report of the incident "fabricat[ed] a statement that plaintiff admitted to engaging in a physical altercation." (*Id.* ¶¶ 18-19.) Defendant Lt. Lichard then allegedly told Plaintiff to "take a

2

deal" under which he would share a cell with his alleged attacker for forty-eight (48) hours.  (*Id.* ¶ 20.)  Plaintiff alleges that when he refused this arrangement and refused to leave the Special Housing Unit (SHU), Litchard threatened him with increased sanctions. (*Id.*)  Such sanctions followed, Plaintiff alleges, when Defendant DHO Bittenbender confiscated Plaintiff's mattress for thirty (30) days and Defendant Ray denied Plaintiff's request to participate in the five hundred (500) hour drug treatment program .  (*Id.* ¶¶ 21-22.)

Plaintiff alleges that shortly after he was transferred to USP Lewisburg, he encountered two (2) other inmates, who had been transferred along with him, telling other inmates that Plaintiff was an informant, but that Defendant Hollenbach denied him protective custody because he could not name the two (2) inmates.  (*Id.* ¶¶ 23-24; P.'s Statement of Material Facts [P.'s Statement], Doc. 58 ¶ 11.)  Plaintiff claims that he "repeatedly requested a photo spread of the inmates in the unit so identification could be made." (P.'s Statement, Doc. 158 ¶ 11.)  Plaintiff also alleges that while housed in the SHU, a cell mate threatened him with assault; when Plaintiff was subsequently removed from the cell, his personal belongings remained there, allowing the cell mate to read Plaintiff's legal material which identified Plaintiff as an informant and to disseminate that information throughout the prison.  (Doc. 135 ¶ 25.)

Plaintiff alleges as well that Defendant Lt. Morales removed Plaintiff to a "dry cell," in which he was deprived of bedding and soap, that Defendant Lt. Gabrielson threatened Plaintiff with increased sanctions unless Plaintiff withdrew a torts claim, and that Gabrielson (1) confiscated Plaintiff's personal property, on December 22, 2004, before

3

any determination by a DHO; (2) ordered Plaintiff, on December 27, 2004, to a cell with an inmate with an assaultive history who was "known to abhor informants;" and (3) placed Plaintiff in hand and leg restraints and denied him clothing and bedding for a prolonged period when Plaintiff refused to move into the cell with that inmate.  (*Id.* ¶¶ 26-29.)  Plaintiff alleges that on January 5, 2005, he was forced to share a cell with a "hostile inmate" who had notified officials he would attack Plaintiff and later did so.  (*Id.* ¶ 30.)

Finally, Plaintiff alleges that on June 8, 2005, a team of correctional officers ordered Plaintiff to submit to handcuffing, which Plaintiff immediately did, and that without provocation Defendant Marr then violently attacked Plaintiff, grabbing his head and neck, forcing him to bend with torso parallel to knees and slamming Plaintiff's head into a cell door, vestibule door, and holding trunk door, causing lacerations and a two (2) inch gash. (*Id.* ¶ 31.)

Plaintiff brings seven (7) claims.  In Count I, he claims that Drs. Londis and Walters were deliberately indifferent in ignoring his mental health needs, in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973.  (*Id.* ¶ 32.) In Count II, Plaintiff claims that Wardens Nash and Joseph Smith exhibited deliberate indifference in violation of the Eighth Amendment in failing "to preclude a policy of coercing Plaintiff to the general population."  (*Id.* ¶ 33.)  In Count III, Plaintiff claims Regional Director Ray's denial of Plaintiff's participation in the court recommended drug treatment program violated Plaintiff's rights under the ADA.  (*Id.* ¶ 34.)  In Count IV, Plaintiff claims that Lt. Gabrielson's use of excessive force, confiscation of Plaintiff's legal and religious materials, and imposition of sanctions prior to a disciplinary hearing violated

Plaintiff's rights under the First, Fifth, Eighth, and Fourteenth Amendments.  (*Id.* ¶ 35.)  In Count V, Plaintiff claims that DHOs Bittenbender and Bunch "violated plaintiff's 'liberty interest' by the imposition of sanctions," and that R. Smith and Unit Manager Hollenbach "failed to consider Plaintiff's safety requirements."  (*Id.* ¶¶ 36-37.)  In Count VI, Plaintiff claims that Lt. Morales violated Plaintiff's rights under the Eighth Amendment and Reisinger violated his rights under the Fifth and Eighth Amendments.  (*Id.* ¶¶ 38-39.)  In Count VII, Plaintiff claims that Marr violated his rights under the Eighth Amendment.  (*Id.* ¶ 40.)  Plaintiff seeks declaratory, injunctive, and monetary relief.  (*Id.* ¶¶ 42-49.)

Because Defendants move to dismiss and for summary judgment, where Plaintiff's claims are insufficient to survive a motion to dismiss, I will grant Defendants' motion on that ground; where Plaintiff has stated claims for which relief can be granted, I will examine those claims under the summary judgment standard, with reference to the exhibits that both parties have submitted.

## LEGAL STANDARDS

### I. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007), or alleged "facts sufficient to raise a right to relief above the

speculative level." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007). In light of Federal Rule of Civil Procedure 8(a)(2), specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam). "[T]he factual detail in a complaint [must not] be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set

forth information from which each element of a claim may be inferred. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## II. Motion for Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof,

simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All reasonable doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See Hersh v. Allen Prods. Co.*, 789 F.3d 230, 232 (1986). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. Sovereign Immunity

Defendants argue that the claims for money damages against the individual Defendants in their official capacities and against the BOP are barred by the doctrine of sovereign immunity. While *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), allows claims for damages against federal agents, it does not allow claims for damages to be brought against federal agencies, such as the

BOP, regardless of any waiver of sovereign immunity.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994).  And, actions against individuals in their official capacities are "in all respects other than name" suits against the government entity.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, Plaintiff's official capacity claims are claims against the United States, which cannot be sued for money damages without an "unequivocally expressed" congressional waiver of sovereign immunity.  *United States v. Idaho ex rel. Director, Idaho Dep't of Water Res.*, 508 U.S. 1, 6 (1993); *United States v. Testan*, 424 U.S. 392, 400 (1976).  The United States has not waived its sovereign immunity from suits for damages arising from constitutional violations.  *E.g.*, *Keene Corp. v. United States*, 700 F.2d 836 838 n.3 (2d Cir. 1983).

Further, the United States' sovereign immunity from suits for money damages has not been waived by the Rehabilitation Act, except in a situation not applicable here: when a federal agency is a "Federal provider of ... assistance" to state, local, and other entities outside the federal government that have discriminated in violation of § 504.  *Lane v. Pena*, 518 U.S. 187, 191-92 (1996).  *Lane* clarified that federal funding of entities "that the Federal Government manages itself," like, the Merchant Marine Academy in *Lane*, and the BOP here, does not bring "any act" of federal executive agencies within this narrow waiver of sovereign immunity.  *Id.* at 194-95.

Therefore, I will grant Defendants' motion to dismiss the claims for money damages against the BOP and the individual Defendants sued in their official capacities.

## II. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1996 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This requirement applies to all claims that arise in the prison setting.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by Defendants.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).  To exhaust his remedies under the BOP's administrative remedy procedure, set forth at 28 C.F.R. §§ 542 *et seq.*, an inmate must take four steps: "(1) an informal resolution attempt, (2) the filing of a formal administrative remedy request with the Warden, (3) an appeal to the Regional Director, and (4) a final appeal to the BOP's General Counsel.  No administrative appeal is considered to have been finally exhausted until a decision is reached on the merits by the BOP's General Counsel."  *Davis v. Miner*, No. , 2007 WL 1237924, at *7 (M.D. Pa. Apr. 26, 2007) (citing 28 C.F.R. §§ 542.13 - 542.15).

Defendants concede that Plaintiff has exhausted his administrative remedies with respect to Counts III, IV, the portion of Count V dealing with housing assignments, and the portion of Count VI dealing with a falsified incident report number 1126369.  (Defs.' Br. in Supp., Doc. 148, at 18.)  They argue, however, that Howard has failed to exhaust administrative remedies with respect to Counts I, II, VII, and the remaining portions of Counts V and VI.  (*Id.*)  In support, they submit the declaration of Adam J. Ackley, the

Attorney Advisor at the Consolidated Legal Center in Allenwood, Pennsylvania, based on his review of the official records of the BOP administrative remedy program, and Defendants have also submit the records on which Mr. Ackley's declaration is based. (Defs.' Ex. 1.)

### A. Count I: Drs. Londis and Walters

Defendants' evidence shows that Howard filed three (3) requests for administrative remedies regarding these claims but that he failed to comply with procedural requirements for exhaustion as to each.  First, he filed a remedy requesting transfer to a medical facility for psychological reasons, which was denied August 27, 2002; filed an appeal that was denied October 3, 2002; and did not file an appeal of this denial.  (Decl. of Adam J. Ackley, May 29, 2007, Defs.' Ex. 1 ¶ 10(a))).  Second, he filed, and after rejection, resubmitted, a remedy requesting access to mental health treatment, both which were rejected because Howard did not include a copy of his attempt at informal resolution; Defendants submit evidence that Howard did not appeal his rejection.  (*Id.* ¶ 10(b)).  Third, Defendants submit evidence that Howard filed a remedy requesting to be "unassigned" from work due to mental health issues; this request was denied and Plaintiff did not appeal.  (*Id.* ¶ 10(c)).

### B.  Count II: Wardens Nash and John Smith

Defendants' evidence shows that no administrative remedy was sought regarding Plaintiff's claim in Count II.  (*Id.* ¶ 11.)

### C. Count V: Claim Against DHOs Bittenbender and Bunch

Regarding the first of the two (2) claims in Count V, concerning sanctions imposed

by Bittenbender and Bunch, Defendants submit evidence that Howard sought and was denied administrative relief up through the Central Office level for two (2) of thirteen (13) incident reports he received for refusing to work, thus exhausting his administrative remedies with regard to those incidents, but that he either did not seek any administrative relief or did not complete the process for the remaining eleven (11) reports.  (*Id.* ¶ 14.)

### D. Count VI: Claim Against Lt. Morales

Regarding the first claim in Count VI, involving Howard's alleged placement in a "dry cell," Defendants submit evidence that he filed an administrative remedy regarding these conditions, which was rejected because he failed to take the proper preliminary steps, including informal resolution; after receiving notice of his right to refile, Howard did not refile or appeal.  (*Id.* ¶ 16.)

### E. Count VII: Officer Marr

Regarding the claim of excessive force against Defendant Marr, Defendants submit evidence that Howard filed an administrative remedy at the Regional Office level, which was rejected because the Regional Office determined that the issue was "not sensitive" and should first be raised at the institutional level.  (*Id.* ¶ 18(a).)  Howard appealed this rejection at the Regional Office level and was rejected for the same reason and instructed to re-file his claim at the institutional level.  (*Id.* ¶ 18(b).)  Almost three (3) months later, and more than four (4) months after the alleged incident, Howard filed an administrative remedy based on the alleged assault with staff at USP Lewsiburg, which was rejected as untimely.  (*Id.* ¶ 18(c).)  Howard filed once again with the Regional Office and was rejected for filing untimely at the institutional level, then filed again at the

Regional Office arguing that his claim was not untimely because he initially filed his institutional level claim on August 21, 2005.  (*Id.* ¶ 18(d), (e).)  In response, the Regional Office denied his filing as untimely but instructed him to provide verification from institution staff that his filing was in fact submitted on August 21, 2005.  (*Id.* ¶ 18(e).)  Finally, Howard filed an administrative remedy with the Regional Office, submitting a staff memorandum as his proof that he filed his institutional level complaint on August 21, 2005.  (*Id.* ¶ 18(f).)  This request was rejected as untimely and because the Regional Office determined that the memorandum Howard submitted did not prove that he filed his claim on August 21, 2005.  (*Id.*)

### F. Summary

The exhaustion requirement is a "bright-line rule" and "it is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis," *Nyhuis v. Reno*, 204 F.3d 65, 73, 75 (3d Cir. 2000).  As such, and because the foregoing uncontested evidence demonstrates that Howard did not properly exhaust his administrative remedies with regard to Counts I, II, VII, the due process claim in Count V based on all incident reports except reports 1233374 and 1252106, and the Eighth Amendment claim in Count VI based on Howard's alleged placement in a dry cell, Defendants' motion for summary judgment on those claims will be granted.  Because Howard has exhausted administrative remedies with regard to his claim in Count V to the extent that claim is based on incident reports 1233374 and 1252106, Defendants' motion will be denied regarding that claim.

### III. Statute of Limitations

Federal courts sitting in Pennsylvania apply a two (2) year statute of limitations to civil rights actions.  *Lake v. Arnold*, 232 F.3d 360, 368-69 (3d Cir. 2000).  Defendants' argument that the statute of limitations bars Counts I, II, and claims in Count V arising from certain incident reports is moot because those claims will all be dismissed on the basis of Howard's failure to exhaust administrative remedies.

Defendants also raise a statute of limitations defense to Plaintiff's claims in Count V that FCI Schuylkill correctional counselor Robert Smith and FCI Lewisburg unit manager Dean Hollenbach "failed to consider Plaintiff's safety requirements."  Any such claims that arose before July 9, 2003, Defendants argue, are time barred, (Defs.' Br. in Supp., Doc. 148, at 20) because Plaintiff's initial Complaint was filed July 8, 2005.  (Doc. 1.)  To begin, the claims against Hollenbach are based on incidents that occurred in 2004 and thus are timely by any measure.  Regarding the claims against Robert Smith, "several courts of appeals have concluded that, because exhaustion is mandatory under the PLRA, the statute of limitations applicable to § 1983 actions must be tolled while a prisoner exhausts."  *Shakuur v. Costello*, 230 Fed. Appx. 199, 201 (3d Cir. 2007) (per curiam) (citing cases from Fifth, Sixth, Seventh, and Ninth Circuit Courts of Appeals); *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (agreeing with "the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process").  Although the Third Circuit Court of Appeals did not reach the issue directly in *Shakuur*, the United States District Court for the Eastern District of Pennsylvania has agreed with the other

14

appellate courts that the statute of limitations begins to run only when the plaintiff has exhausted his administrative remedies under the PLRA. *Wright v. O'Hara*, No. Civ. A. 00-1557, 2004 WL 1793018, at *6 (E.D. Pa. Aug. 11, 2004).

While Mr. Ackley's declaration states that Howard exhausted his administrative remedies through the Central Office level for his claims that Robert Smith and Hollenbach failed to consider his safety requirements in making his housing assignments, Mr. Ackley does not state the date on which those remedies were exhausted or cite to the relevant part of the lengthy record of files that accompanies his declaration.  A review of that record reveals at least two reports of filings that mention "housing assignment."  These filings are numbered 277168-F1 and 277168-R1, and the latter was entered on October 28, 2002.  (Defs.' Ex. 1, Attachment B, Doc. 149, at 40, 43.)  Although this date is more than two (2) years before the date of Plaintiff's Complaint, it is not clear that this is the date on which Plaintiff exhausted his administrative remedies.  Indeed, other references in Mr. Ackley's declaration to filings ending in "R-1" are references to the Regional level, not the final Central Office level.  It is not clear when Howard's appeal of this claim to the Central Office was taken and denied, but Mr. Ackley's declaration indicates that these steps were indeed taken.  In addition, the record also contains files of remedy requests in which Howard disputed being "triple bunked in SHU," which continue into 2004; because Howard's placement in common areas of the SHU is one of the actions he alleges Robert Smith improperly took, these files may arise from the same incidents as Howard's claim in Count V.  In short, the record is not conclusive as to when Plaintiff exhausted his administrative remedies related to his claim in Count V; it is therefore not conclusive as to when the statute of limitations began to run.  Because the statute of limitations is an

affirmative defense, *see Smith v. Del. County Court*, No. 07-4262, 2008 WL 101743, at

*1 (3d Cir. Jan. 10, 2008), and Defendants have not met their burden of demonstrating

that Howard's claim in Count V is untimely, I will not grant Defendants' motion on this

ground.


## IV. Personal Involvement and Respondeat Superior: Individual Capacity Claims

The remaining claims not barred by the exhaustion requirement name only

Defendants Ray, Gabrielson, Bittenbender, Bunch, Robert Smith, Hollenbach, and

Reisinger.  All other individual Defendants (Nash, Londis, Walters, Litchard, Joseph

Smith, Morales, Marr, and Dodrill) will therefore be dismissed.  In addition, while Howard

names Defendant Bunch along with DHO Bittenbender in Count V, his pleadings lack

factual allegations that Bunch had personal involvement in any alleged violations.  He

only states that "Mr. Bunch was the disciplinary hearing officer and responsible for the

Lewisburg Disciplinary Process."  (Am. Compl., Doc. 135 ¶ 9.)  Howard's claim against

Bunch in Count V, therefore, alleges no more than respondeat superior liability for the

sanctions he alleges that Bittenbender imposed.  (*See id.* ¶ 21.)  In § 1983 actions,

"[s]upervisory liability cannot be based solely upon the doctrine of respondeat superior."

*Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990).  Therefore, the claim

against Defendant Bunch will also be dismissed.


## V. Official Capacity Claims for Equitable Relief

Although, as Defendants point out, Howard did not specifically name the BOP in

any Count, permissible claims against it remain in the case to the extent that Defendants

Ray, Gabrielson, Bittenbender, Robert Smith, Hollenbach, and Reisinger are sued in their

official capacities for equitable relief because the Administrative Procedure Act provides:

> An action in a court of the United States seeking relief other than money
> damages and stating a claim that an agency or an officer or employee
> thereof acted or failed to act in an official capacity or under color of legal
> authority shall not be dismissed nor relief therein be denied on the ground
> that it is against the United States....

5 U.S.C. § 702; *see also Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988).  With

regard to the Rehabilitation Act particularly, injunctive relief is available even though

damages are not: the Court in *Lane v. Pena* did not directly address the propriety of

injunctive relief, which had been awarded to the plaintiff and not disputed on appeal, but

the Court's discussion did not indicate that such relief was unavailable or that federal

executive agencies could not be defendants in § 504(a) actions.  *See* 518 U.S. at 197

("Section 505(a)(2) itself indicates congressional intent to treat federal Executive

agencies *differently* from *other § 504(a) defendants*.") (second emphasis added); *id.* at

196 ("It is plain that Congress is free to waive the Federal Government's sovereign

immunity against liability without waiving its immunity from monetary damages awards.");

*see also Spence v. Straw*, 54 F.3d 196, 200 (3d Cir. 1995) ("[A]n aggrieved party may

also sue a federal agency for violation of section 504 – which Congress amended in 1978

to prohibit discrimination by federal agencies....").  The United States District Court for the

District of Columbia also recently held that the Court's reasoning in *Lane* "supports the

view that injunctive relief is available against the sovereign under" the "'program or

activity' language of the Rehabilitation Act."  *Am. Council of Blind v. Paulson*, 463 F.

17

Supp. 2d 51, 52, 57-58 (D.D.C. 2006) (holding that the Department of the Treasury discriminated in a "program or activity" under § 504(a) by failing to design and issue paper currency that is distinguishable to blind and visually impaired people).  In light of the *Lane* Court's discussion of the Rehabilitation Act's "'clear waiver' of sovereign immunity for claims of attorney's fees," the court reasoned, "there would be no purpose in crafting a provision allowing attorney fees unless the statute contemplates awards of declaratory and injunctive relief"). *Id.* at 58.

Plaintiff's claims for equitable relief against the BOP can therefore go forward.


## VI. Americans With Disabilities Act and Rehabilitation Act Claims

Howard's claim in Count III that Defendant Ray violated his rights under Title II of the ADA will be dismissed because the ADA does not apply to the federal government, its agencies, or employees. *E.g., United States v. Wishart*, 146 Fed. Appx. 171, 173 (9th Cir. 2005) ("By definition, the ADA does not apply to the federal government); *Luna v. Roche*, 89 Fed. Appx. 878, 881 n.4 (5th Cir. 2004) (same); *Sarvis v. United States*, No. 99-0318, 2000 WL 1568230, at *2 (2d Cir. Oct. 19, 2000) ("Title II of the ADA is not applicable to the federal government ... [Plaintiff] therefore cannot proceed against the BOP under the ADA.") (internal quotation marks and citation omitted).

### A. The Rehabilitation Act

Howard also claims in Count III that Defendant Ray, then the Northeast Regional Director, violated the Rehabilitation Act when he "overruled" (Am. Compl., Doc 135 ¶ 22) and "blocked" (*id.* ¶ 34) Howard's participation in the five hundred (500) hour drug

treatment program "based on behavior that resulted from Plaintiff's mental health issues." ( Pl.'s Statement of Material Facts, Doc. 158 ¶ 9.)   Although Ray cannot be sued in his individual capacity under the Rehabilitation Act, *see, e.g., Daniel v. Levin*, 172 Fed. Appx. 147, 149 (9th Cir. 2006), he may, as noted above, be sued in his official capacity for equitable relief.  Defendants respond that "it is Howard who refused to enter general population [a prerequisite for entering the program] and therefore denied himself the opportunity to participate in the program."  (Br. in Supp., Doc. 148, at 22-23.)  But Howard claims that the Act requires prisons to make "minimal accommodations" to permit disabled persons to participate in prison programs.  (Br. in Opp'n, Doc. 159 ¶¶ 32-33.)

Section 504(a) of the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability ... as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive agency.

29 U.S.C. § 794(a).  It requires that qualified disabled individuals be "provided with meaningful access to the benefit" in question.  *Alexander v. Choate*, 469 U.S. 287, 301 (1985).  But, to be eligible for relief, Howard must first show that (1) he is an "individual with a disability," (2) he was otherwise qualified for the benefit of the program, and (3) he was excluded because of discrimination on account of his disability.  *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).  Howard is a qualified individual with a disability only if he "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment."  29 U.S.C. § 705(20)(B).

**B. Individual with a Disability**

Howard claims that he is impaired by "Bi-Polar, Schizophrenia, and related

disorders." (Howard Decl., Doc. 160, at 2).  He also submitted a Memorandum prepared

in 1996 for the sentencing phase of an unrelated case, which recounts Howard's history

of hospitalization for mental health problems, which began when Howard was nine (9)

years old, and reports that Howard has been diagnosed with "Chronic Schizophrenia,

Paranoid Schizophrenia, Schizo Affective Disorder with Psychotic Features, Major

Depression with Psychotic Episodes, BiPolar Disorder and Polysubstance Abuse."

(Memorandum in Aid of Rule 35, Jo Cohen, M.S.W., Offender Rehabilitation Division,

Public Defender Service for the District of Columbia, June 3, 1996, Pl.'s Ex. 1, Doc. 161,

at 1-3.)  Defendants concede that Howard has some impairment. One of the BOP

psychologists who examined Howard stated that he "has a history of hospitalization for

mental health" and diagnosed him with "schizoid personality (not paranoid

schizophrenia)."  (Decl. of Louis Gary Londis, Chief Psychologist, FCI-Schulkyill, Oct. 20,

2005, Defs.' Ex. 2, Doc. 149 ¶ 8.)

Even if Howard has an impairment or has a record of having an impairment, he

must also make a showing that his impairment substantially limits a major life activity.

Major life activities are "functions such as caring for one's self, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working."  28 C.F.R. §

42.540(k)(2)(ii).  Although Howard has not expressly articulated a major life activity that

he claims is substantially limited, a liberal reading of the record suggests that he claims

that his conditions substantially limit his ability to live with others and to work in prison.

(*See* Pl.'s Statement, Doc. 158 ¶ 2-3 ("Defendants denied that Plaintiff suffered from Bi-

polar, Schizophrenia or any of the disorders he had historically been diagnosed with.  As a result of defendants' denial, Plaintiff was arbitrarily housed with an inmate who posed a danger ..."); Defs.' Br. in Supp., Doc. 148, at 9 ("Howard ... requested a single cell assignment based on unspecified 'mental health issues.' ... Howard received several incident reports for refusing to accept a cell mate and refusing to report to work assignments, citing 'mental health issues.'"); Inmate Request to Staff, Defs.' Ex. 5, Doc. 149, at 14 ("Due to mental health disorders I am requesting unassignment.").).

Although work is a major life activity, "the inability to perform a particular job or class of jobs does not qualify as a substantial limitation on the major life activity of work." *Fronczak v. N.Y. State Dep't of Corr. Servs.*, 2 Fed. Appx. 213, 217 (2d Cir. 2001) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491-92 (1999)).  Howard has not even alleged that he is substantially limited in any work except that in the prison setting. Concerning the claim he cannot live with a cell mate, the ability to "interact with others" has been recognized as a major life activity.  *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir. 1999); *but see Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 15 (1st Cir. 1997) (although assuming it was a major life activity for purposes of its decision, stating that "the ability to get along with others" is too vague to be a major life activity). The United States District Court for the Eastern District of Pennsylvania considered these two precedents and the fact that the Third Circuit Court of Appeals "is generally unwilling to take a narrow view of what constitutes a major life activity," decided to move on to the next part of the inquiry "rather than to decide that talking and interacting with others is not a major life activity."  *Peter v. Lincoln Tech. Inst., Inc.,* 255 F. Supp. 2d 417, 432 (E.D. Pa.

2002); *see also Lloyd v. Washington & Jefferson College*, No. 05-802, 2007 WL 1575448, at *8 (W.D. Pa. May 30, 2007) (declining to hold that "the ability to think and interact with others" was not a major life activity); *Hubbard v. Pleasant Valley Sch. Dist.*, No. 3:CV-03-0797, 2007 WL 42093, at *3-4 (M.D. Pa. Jan. 6, 2006) (discussing "interacting with others" as a major life activity).

Even if these are major life activities, Howard has not submitted evidence sufficient to survive summary judgment that he is "substantially limited" in these activities. "At the summary judgment stage, the plaintiff has the obligation of presenting some evidence of a condition that substantially impaired a major life activity...." *Sever v. Henderson*, 381 F. Supp. 2d 405, 416 (M.D. Pa. 2005). Howard's evidence, the memorandum he submitted, describes the effects of schizophrenia and bi-polar disorder generally. But, the Supreme Court has made clear that a showing of disability requires "an individualized assessment of the effect of an impairment." *Toyota Motor Mfg., v. Williams*, 534 U.S. 184, 199 (2002). The Court stated: "[i]t is insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of an impairment. Instead, ... those claiming the Act's protection [must] ... prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Id.* at 198.

The only evidence Howard submits regarding how his impairments limit him are his own statements that he needs "minimal accommodations for bi-polar, schizophrenia, and related disorders" (Howard Decl., Doc. 160) and the statements in Cohen's 1996 memorandum that Howard "simply *does not* know how to negotiate a complex society

22

when there is no one to provide supervision, support, nurturance or controls," and that "[i]ncarceration appears to be an ineffective means of addressing the complex psychiatric issues facing this 46 year old man.  Without appropriate treatment [placement in a psychiatric residential facility] Mr. Howard will eventually return to the community in a more severely decompensated state than he is in now."  (Cohen Mem., Doc. 161, at 2-4.)

This information, indicating only that Howard would be better off in a residential treatment facility than a prison, is simply insufficient at the summary judgment stage to support the claim that his impairments substantially limit his ability to interact with others or share a cell.  Howard has never elaborated on why he cannot share a cell or how his desire to live alone is related to his impairments.  The record on summary judgment thus reveals no genuine issue of material fact as to whether Howard is substantially limited in a major life activity.  For this reason, summary judgment for Defendants will be granted on the Rehabilitation Act claim in Count III.

**VII. Eighth Amendment Claims**

**A. Count IV**

Plaintiff claims that Defendant Gabrielson used excessive force prohibited by the Eighth Amendment by ordering Plaintiff placed in "hard ambulatory restraints" as a result of Plaintiff's refusal to cell with an inmate who Plaintiff feared would attack him.  (Am. Compl., Doc. 135 ¶¶ 29, 35; Pl.'s Statement, Doc. 158 ¶ 16.)

"When excessive force is alleged in the context of a prison disturbance, the inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm, and whether the injury is more than de

minimus." *Blakeney v. Dauphin County Prison*, 156 Fed. Appx. 520, 522 (3d Cir. 2005)

(internal quotation marks omitted) (citing *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir.

2000) and *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).  Also although injury need not be

serious to be actionable, "[t]he Eighth Amendment's prohibitions of 'cruel and unusual'

punishments necessarily excludes from constitutional recognition *de minimus* uses of

physical force, provided that the use of force is not of a sort repugnant to the conscience

of mankind." *Hudson*, 503 U.S. at 9-10.  The United States District Court for the Middle

District of Pennsylvania recently held that an inmate who complained that he was pushed

and poked in the face and felt he was physically assaulted, but did not allege he suffered

any physical injury or that he received or was refused medical treatment, had alleged at

most a *de minimis* injury, and had therefore stated no claim upon which relief could be

granted.  *Ruta v. Morris*, No. 3:CV-07-1832, 2007 WL 3342771, at *3 (Nov. 7, 2007).

Howard, similarly, has not claimed he suffered any injury as a result of being placed in

hard ambulatory restraints.  For this reason, Defendants' motion to dismiss the excessive

force claim against Reisinger in Count IV will be granted.

**B. Count V**

Plaintiff alleges in Count V that Defendants R. Smith (correctional counselor at

FCI-Schuylkill) and Hollenbach (unit manager at FCI-Lewisburg) violated his rights under

the Eighth Amendment by failing to consider his safety requirements in their decisions

about his housing.  (Doc. 135 ¶ 37.)  He contends that they were deliberately indifferent

to his serious medical needs.  Outside the context of a prison disturbance, which is

characterized as "a single instance of prisoner unrest where there is a need to act quickly," Eighth Amendment claims are judged by the deliberate indifference standard, which a defendant violates if he was "deliberately indifferent to a substantial risk of harm to [the Plaintiff] and did nothing to prevent it."  *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*, 362 F.3d 572, 586-87 (3d Cir. 2004).

### 1. Robert Smith

Regarding Smith, Plaintiff alleges that, as a result of Drs. Londis and Walters' determination that Plaintiff's mental health condition did not require him to be housed in a single cell, Smith assigned him a cell mate "without regard for his disability," and that this cell mate, in July, 2003, attacked Plaintiff causing injuries.  (Am. Compl., Doc. 135 ¶¶ 16-18.)  Plaintiff claimed that he informed Smith that his mental health status required accommodations regarding cell assignment.  Plaintiff does not claim, however, that Smith knew of any risk of physical harm that would come to Plaintiff if he were housed with a cell mate.  He has not submitted any evidence or made more than conclusory allegations that Smith was deliberately indifferent to a substantial risk of harm, and therefore, this claim will be dismissed.

### 2. Dean Hollenbach

Plaintiff alleges that following his arrival at USP-Lewisburg, Hollenbach was deliberately indifferent to a substantial risk of harm by denying Plaintiff protective custody after he told Hollenbach that he feared for his safety because he overheard two (2) inmates pointing him out as an informant. (Doc. 135 ¶¶ 23-24; Br. in Opp'n, Doc. 159 ¶¶ 25-26).  After a fight with his cell mate at FCI-Schuylkill, Howard states, he "informed to

staff about" that cell mate.  Howard submitted a declaration stating that Hollenbach denied him protective custody only because Howard was unable to name the inmates and that even though Howard "repeatedly notified officials" that he would be able to identify the inmates by photograph, Hollenbach never provided him with photographs. (Howard Decl., Doc. 160, at 5.)

Defendants submitted the declaration of Dean Hollenbach, in which he stated, regarding this incident, that on May 12, 2004, Plaintiff requested to be placed in the Special Housing Unit [SHU] and the Operations Lieutenant placed him there "pending an investigation by his Unit Team."  (Declaration of Dean Hollenbach, June 4, 2007, Defs.' Ex. 6, Doc. 149 ¶ 9.)  Hollenbach also stated that he interviewed Plaintiff on May 19, 2004, when Plaintiff told him that "that thing from Schuylkill has followed me here," referring to the fight, and said that "two inmates from the USP Lewisburg compound had approached him concerning the fight and informed him to 'check-in' to SHU."  (Id. ¶ 10.)

Hollenbach does not dispute that, because he was unable to identify the two inmates or obtain any other information (although he also interviewed the Plaintiff's cell mate) about the threat to Plaintiff, if any, he ultimately "recommended that the Plaintiff be considered an 'unverified' protection case and be released from the SHU to the general inmate compound."  (Id. ¶¶ 11-14.)  However, Hollenbach also stated that Plaintiff refused to leave the SHU and, although he received disciplinary reports as a result, he was not forced into general population, and indeed did not reenter the general population until August 15, 2005, when he agreed to go there.  (Id. ¶¶ 15-20.)  Hollenbach stated that "[s]ince that date, the Plaintiff has not raised any security concerns with me, or has he made any requests to be placed in SHU."  (Id. ¶ 21.)

26

Plaintiff has not submitted any evidence or even allegations to contradict this evidence, which shows that, even accepting as true Plaintiff's allegations that he faced a substantial threat if placed in general population and that he did not receive a requested photo spread, Hollenbach nonetheless did attempt to verify Plaintiff's claim, allowed Plaintiff to remain in the SHU while the investigation was pending, and never at any time forced him into general population.  These actions do not amount to deliberate indifference to a substantial risk of harm to Plaintiff, and for this reason, Defendant's motion for summary judgment in favor of Defendant Hollenbach on this claim will be granted.

### C. Count VI

Plaintiff also states in Count VI that Defendant Reisinger's actions violated his Eighth Amendment rights, but the only allegations against Reisinger is that he fabricated an incident report; as this does not rise to the level of the Eighth Amendment's prohibitions, Defendants' motion to dismiss this claim will be granted.


### VIII. First Amendment Claim

In Count IV, Plaintiff claims that Defendant Gabrielson violated his First Amendment rights.  Two of Gabrielson's alleged actions implicate the First Amendment: (1) confiscating Plaintiff's legal and religious materials  (Doc. 135 ¶ 35) and (2) requesting that Plaintiff withdraw a tort claim Plaintiff had filed as a result of a head injury caused by a sharp metal shelf in the SHU, threatening increased sanctions against Plaintiff when he refused to withdraw the claim, and imposing sanctions (Pl.'s Statement, Doc. 158 ¶ 15).

The confiscation of legal materials can, by itself, violate an inmate's First Amendment right of access to courts, but summary judgment for Defendants is appropriate unless the inmate has made a showing that the confiscation was not reasonably related to a legitimate penological interest and that he suffered actual injury, meaning, his efforts to pursue a legal claim were hindered. *McClinton v. Ark. Dep't of Corr.*, 166 Fed. Appx. 260, 260-61 (8th Cir. 2006). Howard has not made such showings.

Gabrielson could also have violated Howard's First Amendment rights if he retaliated against him for the exercise of those rights. "A prisoner's allegations concerning retaliation must include the following: (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mattis v. Dohman*, No. 07-2591, 2008 WL 101745, at *1 (3d Cir. Jan. 10, 2008) (per curiam) (internal quotation marks and citations omitted). Howard's conduct was protected, as the First Amendment protects prisoners' right to petition the government for redress of grievances, including by filing non-sham lawsuits. *Atkinson v. Taylor*, 316 F.3d 257, 269 (3d Cir. 2003); *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981); *see also San Filippo v. Bongiovanni*, 30 F.3d 424, 434-43 (3d Cir. 1994).

But, turning to the second and third prongs, Plaintiff has not put forth evidence sufficient to survive a motion for summary judgment that Gabrielson responded to his tort claim with actionable retaliation. A prisoner alleging in a § 1983 suit that he was "retaliated against for exercising his constitutional rights" must allege that "the retaliatory

28

action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (upholding grant of summary judgment for defendants on prisoner's claim that his reclassification was retaliatory, where "there was 'some evidence' to support" the reclassification and where "the reclassification served the legitimate penological purpose of maintaining prison discipline").

The only allegedly adverse action by Gabrielson which Howard clearly alleged to be in response to his lawsuit was a threat of punishment.  (*See* Howard Decl., Doc. 160 ("threatened to punish me if I didn't withdraw a torts claim")).  But a threat from a prison guard, alone, is not actionable retaliation.  *E.g., Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004); *Gay v. City of Phila.*, No. 03-CV-5358, 2005 WL 1844407, at *5 (E.D. Pa. Aug. 2, 2005).

The only other adverse actions Gabrielson allegedly took are (1) ordering Howard placed in hard ambulatory restraints and denying him clothing and bedding at that time, and (2) confiscating Howard's legal and religious material.  First, Howard has not made even an allegation that his placement in the restraints and alleged denial of clothing and bedding was at all related to his lawsuit.  Indeed, he states that Gabrielson took these actions "as a result of plaintiff's refusal to cell with an inmate who had an assaultive history."  (Pl.'s Statement, Doc. 158 ¶ 16; *see also* Br. in Opp'n, Doc. 159 ¶ 9; Am. Compl., Doc. 135 ¶ 29.)  These allegations, therefore, cannot support a First Amendment retaliation claim.

Second, regarding the confiscation of materials, Howard has not specifically

alleged that these actions were in response to his refusal to withdraw his lawsuit, or even whether they happened after or before Gabrielson allegedly asked him to withdraw the suit.  "Although there is not a heightened pleading standard in civil rights cases, a civil rights complaint in order to comply with Rule 8 must contain at least a modicum of factual specificity ... .  A civil rights complaint complies with this standard if it alleges the conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials."  *Hill v. Laino*, No. 3:06-CV-1572, 2006 WL 3051795, at *7 (M.D. Pa. Oct. 25, 2006).

The allegations about confiscated materials appear in a list of actions Gabrielson allegedly took and precede a list of constitutional provisions allegedly violated; it is thus not clear whether Howard intended the confiscation of materials to support his First Amendment claim in addition to his due process claim.  Even assuming that he did, Howard still has not elaborated on the mere mention of "religious material" in his pleading and declaration.  Regarding legal material, he has stated that "although the Disciplinary Hearing Officer specifically stipulated the allowance of Plaintiff's legal material during impounding of Plaintiff['s] personal property, Gabrielson ignored this,"  (Pl.'s Statement, Doc. 158 ¶ 17), indicating that the confiscation of his legal materials may not have advanced legitimate penological goals.  This allegation, while necessary, is not sufficient, particularly at the summary judgment stage because it is not supported by evidence.  It is also not sufficient because it does not overcome the lack of allegations or evidence showing a causal connection between Howard's protected activity and the alleged confiscation.

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's

First Amendment claim will be granted.

## IX. Due Process Claims

### A. Alleged Deprivations of Property and Liberty Interests

In Count IV, Plaintiff alleges that Defendant Gabrielson deprived him of a property interest without due process of law by imposing sanctions, including confiscating Plaintiff's personal property prior to disciplinary hearings, (Am. Compl., Doc. 135 ¶ 35), and deprived him of a liberty interest without due process of law by placing him in hard ambulatory restraints without a procedural protection. (Pl.'s Br. in Opp'n, Doc. 159 ¶ 28.) In Count V, he alleges that Defendant Bittenbender violated his liberty interest in "in administrative segregation or protective custody without being sanctioned with a routine series of disciplinary reports," (Br. in Opp'n, Doc. 159 ¶ 30) by imposing sanctions for "refusing work/program assignment" which lead to the two (2) incident reports (numbered 1233374 and 1252106) that Plaintiff appealed to the Central Office level, each of which resulted in a forfeiture of thirty (30) days of statutory good time.  (*See* Ackley Decl., ¶¶ 14(a); 19(d) & (f).)  Finally, in Count VI, Plaintiff alleges that Defendant Reisinger violated his Fifth Amendment rights by submitting a disciplinary report, numbered 1126369, which included a fabricated statement that Plaintiff admitted to engaging in a physical altercation with a cell mate who Plaintiff contends attacked him.

31

### B. Adequate Post-Deprivation Remedies: Counts IV and VI

### 1. Property Interest: Confiscated Personal Property

"A prisoner's due process claim based on a state actor's unauthorized deprivation of property is not actionable under § 1983 unless no adequate post-deprivation remedy is available." *Mattis*, 2008 WL 101745, at *2 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  A prison's "internal grievance procedure through which the [government] hears claims and, when appropriate, provides remedies" is "a meaningful post-deprivation remedy regarding the loss of [a prisoner's] property." *Id.* (citing *Hudson*, 468 U.S. at 533; *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)); *Durham v. Dep't of Corr.*, 173 Fed. Appx. 154, 157 (3d Cir. 2006)).  Because Howard took advantage of the prison's internal grievance procedure, and has not alleged any deficiency in officials' adherence to that procedure, his allegation does not survive the Defendants' motion to dismiss.  *See Monroe v. Beard*, No. 05-4937, 2007 WL 2359833, at *13 (E.D. Pa. Aug. 16, 2007) (stating that inmate's procedural due process claim arising from confiscation of property – on which defendants were granted summary judgment – had survived the motion to dismiss because plaintiff pled that the prison did not follow its internal grievance procedure).

### 2. Liberty Interests: Ambulatory Restraints and Fabricated Report

This rule, that postdeprivation remedies can satisfy due process, also applies to liberty interests, "where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

Because of this rule, I will dismiss Plaintiffs' remaining claims in Counts IV and VI without reaching the question whether the liberty interests he claims in those Counts are constitutionally protected.

In Count IV, Howard does not challenge the BOP's policy on use of restraints; rather, he challenges Gabrielson's use of restraints as violative of that policy. (Br. in Opp'n, Doc. 159 ¶¶ 10-12, 14.) That is, Howard alleges "the kind of 'random, unauthorized' wrongful deprivation of liberty" that the state could not have prevented with predeprivation process. His claim in Count VI that Reisinger included a statement on the incident report that was "completely false" likewise alleges random, unauthorized conduct. (*See* Howard Decl., Doc. 160.) Therefore, because, as noted above in the discussion of administrative remedies, Howard took advantage of the postdeprivation remedy afforded by the BOP's grievance procedure, and does not now challenge the adequacy of that procedure, he has not stated claims for deprivation of procedural due process in Counts IV or VI.

### C. Favorable Termination Rule: Count V

On the other hand, Howard's allegation in Count V that Defendant DHO Bittenbender imposed sanctions on him while he was in the SHU is not an allegation of a random, unauthorized action and does not fall under the rule of *Hudson* and *Zinermon.* Defendants argue that this claim is barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997), under which "a § 1983 plaintiff cannot seek damages for harm caused by actions the unlawfulness of which would necessarily render the fact or length of his confinement

invalid, unless he can prove that the conviction, sentence, or prison disciplinary sanction that resulted from those actions has been reversed, invalidated, or called into question by a grant of federal habeas corpus relief." *Torres v. Fauver*, 292 F.3d 141, 143 (3d Cir. 2002).  This rule applies to claims challenging "prison disciplinary sanctions that alter the duration of a prisoner's incarceration," such as the loss of statutory good time that resulted from the incident reports at issue here, but does not apply "to claims that implicate only the conditions, and not the fact or duration, of a prisoner's incarceration." *Id.*

Howard's claim challenges the conditions of his confinement: he does not seek restoration of good time credits, and the liberty interest he asserts is the interest, after having been assaulted by inmate Dorsey and having documents indicating he was an informant discovered and circulated by inmate Bostic, "in administrative segregation or protective custody without being sanctioned with a routine series of disciplinary reports." (Br. in Opp'n, Doc. 159 ¶ 30).  Nonetheless, his claim is barred by the favorable termination rule.  In *Edwards*, the plaintiff challenged the procedures that led to his sanction, which included a loss of thirty (30) days of good time credit and placement in restrictive settings.  520 U.S. at 643.  He sought declaratory relief and damages, but, like Howard, did *not* seek restoration of the good time credits.  *Id.* at 643-44.  Even though he was not requesting relief that would alter the term of his confinement, the Supreme Court held that the favorable termination rule barred his claim because a finding that the procedures were invalid would "necessarily imply the invalidity of the deprivation of his good-time credits."  *Id.* at 646.  Likewise, here, a finding that imposing sanctions on

Howard "due to Plaintiff's refusal to leave the SHU because of fear for his safety," (Am. Compl., Doc. 135 ¶ 21) violated his constitutional rights would necessarily imply the invalidity of those sanctions.  For this reason, without reaching the question whether Howard's asserted liberty interest is constitutionally protected, I find that his claim in Count V is barred by the favorable termination rule.

## CONCLUSION

The claims for damages against the BOP and the individual defendants in their official capacities will be dismissed because they are barred by sovereign immunity. Counts I, II, VII, the due process claim in Count V based on all incident reports except reports 1233374 and 1252106, and the Eighth Amendment claim in Count VI based on Howard's alleged placement in a dry cell will be dismissed because Plaintiff failed to exhaust administrative remedies.  Any claims against Defendants Nash, Londis, Walters, Litchard, Joseph Smith, Morales, Marr, Dodrill, and Bunch will be dismissed because Plaintiff has not alleged in any Count of his Amended Complaint that they were personally involved in any violation of his rights.  The ADA claim in Count III will be dismissed because the ADA does not apply to federal agencies.  Finally, summary judgment will be granted in favor of Defendants on all remaining claims because Howard did not put forth sufficient evidence to survive a motion for summary judgment on his Rehabilitation Act claim in Count III, his Eighth Amendment claims in Counts IV, V, or VI or his First Amendment claim in Count IV, and because his procedural due process claims in Counts IV and VI are barred by adequate postdeprivation remedies and those in Count V are barred by the favorable termination rule.

An appropriate order follows.


February 1, 2008                              /s/ A. Richard Caputo
Date                                          A. Richard Caputo
                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES V. HOWARD,

     Plaintiff

          v.

BUREAU OF PRISONS, et al.,

     Defendants.

CIVIL ACTION No. 3:05-CV-1372

(JUDGE CAPUTO)

**ORDER**

Now, this   1st  day of February, 2008, it is **HEREBY ORDERED** that Defendants'

Motion to Dismiss and for Summary Judgment is **HEREBY GRANTED**.

                                         /s/ A. Richard Caputo
                                         A. Richard Caputo
                                         United States District Judge